Nick Pacheco, Esq. (SBN 173391)
nickpacheco@nickpachecolaw.com
NICK PACHECO LAW GROUP, APC
15501 San Fernando Mission Blvd., Suite 110
Mission Hills, CA 91345
Telephone: (888) 888-8641
Facsimile:   (800) 210-0028

Attorney for Plaintiffs,
Guadalupe Gonzalez and Benito Gonzalez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| GUADALUPE GONZALEZ, an individual and BENITO GONZALEZ, an individual<br><br>Plaintiffs<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC,; JIM LEONARD'S MORTGAGE CONNECTION, INC. and DOES 1 through 20 Inclusive.<br><br>Defendants | Case No.:  4:13-cv-04353-CW<br><br>PLAINTIFFS' RESPONSE TO DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OR POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: December 5, 2013<br>Time: 2:00 p.m.<br>Crtrm.: 2 – 4th Floor |

Plaintiffs GUADALUPE GONZALEZ and BENITO GONZALEZ (collectively, "Plaintiffs") hereby respectfully submit their written Response to Defendant NATIONSTAR MORTGAGE, LLC's (the "Defendant") Motion to Dismiss (the "Motion").

///

///

///

///

///

///

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

This is a case where JIM LEONARD'S MORTGAGE CONNECTION, INC. ("LEONARD") and FIRST NATIONAL BANK OF ARIZONA ("FIRST NATIONAL") conspired to defraud Plaintiff in the origination of the subject mortgage loan of this case. Plaintiffs hired LEONARD to serve as their mortgage loan broker with the expectation that LEONARD would perform its work pursuant to their fiduciary duty as imposed by California law.  Unfortunately, LEONARD was more interested in acquiring a bonus "kickback" in the form of a Yield Spread Premium ("YSP") from FIRST NATIONAL than pursue the best loan for Plaintiffs.  At no time during the origination of this loan did LEONARD disclose to Plaintiffs that it was working as a "double agent" and receiving monies from both Plaintiffs and FIRST NATIONAL.  LEONARD received a loan origination fee from Plaintiff from the loan proceeds <u>and also</u> received the YSP "kickback" from FIRST NATIONAL *paid outside of closing* for betraying Plaintiffs.

On or about May 22, 2013, Defendant NATIONSTAR accepted assignment of this loan through a "Corporate Assignment of Deed of Trust" with actual knowledge and/or constructive knowledge of LEONARD and FIRST NATIONAL's fraudulent acts in the origination of this loan.  As of August 16, 2010, it was common knowledge in the financial world and mortgage loan industry that the Federal Reserve Board banned brokers from receiving Yield Spread Premiums because they were known as "unfair, abusive and deceptive loan practices" that victimized borrowers.  Furthermore, in California it is common knowledge that a broker, such as LEONARD here, receiving monies paid outside of closing from FIRST NATIONAL was a direct violation of LEONARD's fiduciary duties to Plaintiffs under California law.  NATIONSTAR's review of this loan prior to acquiring it revealed to them in the settlement statement that a Yield Spread Premium was paid to LEONARD and consequently they accepted a Deed of Trust knowing of the fraudulent activities of LEONARD and FIRST NATIONAL.  Under these circumstances, NATIONSTAR is liable to Plaintiffs for all causes of actions that stem from the original fraudulent acts that victimized Plaintiffs.

## II. APPLICABLE STANDARDS ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Perfect 10, Inc. v. Vista Int'l Serv. Ass'n, 494 F.3d 788,794 (9th Cir. 2007). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1951 (2009) (quoting Twombly, 550 U.S. at 557). In deciding a Rule 12(b)(6) motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1096 (9th Cir. 2008). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

If the complaint is dismissed, the plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment. See *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

The issue presented by such a motion is not whether the Plaintiffs will prevail in the action, but whether the Plaintiffs are entitled to offer evidence in support of their claims. *See* Scheuer v.Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds,* Davis v. Scherer, 468 U.S. 183 (1984).

The court must construe the complaint in the light most favorable to the Plaintiffs, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in plaintiffs favor. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996); Usher v. City of Los

Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Courts must assume that all general allegations embrace whatever specific facts might be necessary to support them. Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994).

If the Court dismisses any claim for relief, it must then consider whether to grant leave to amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and quotation marks omitted).

### III. LEGAL ARGUMENT

**A. Plaintiffs' Claims are Not Preempted Because They Are of General Applicability**

Overwhelming case law contradicts Defendant's preemption claim. In Watters v. Wachovia Bank, N.A., 550 U.S. 1 (2009), the Court found that \"Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the [National Banking Act, *12 U.S.C. §371* "NBA"]." It can hardly be argued that expecting a federally chartered bank, like any other individual or organization, to not commit fraud, to engage in fair business practices, and to comply with contracts "conflicts with the letter or the general purposes of the NBA." Further, state regulation of banking is permissible when it "does not prevent or significantly interfere with the national bank's exercise of its powers." Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 33 (1996). Also, in general, "when plaintiffs rely on a state law of general application, and the application of the law does not purport to specifically regulate lending activity, the state law is not preempted." Reyes v. Downey Savings and Loan Ass'n, 541 F.Supp.2d 1108, 1114 (C.D. Cal. 2008). For example, in an opinion letter issued in 1999, OTS stated that federal law "do[es] not preempt the entire [UCL] or its general application to federal savings associations in a manner that only incidentally affects lending and is consistent with the objective of allowing federal savings associations to operate in accordance with uniform standards." Reyes, 541 F.Supp.2s at 1114 (quoting California Unfair Competition Act, OTS Opinion Letter P-99-3

(March 10, 1999)). Using this authority from the OTS, the District Court found that since the plaintiffs in the case merely alleged that Defendants promised to them a lower interest than was delivered, misrepresented the contract terms, and breached the contract terms, this claim is not preempted. This is because "Plaintiffs are seeking to use the UCL to apply general principles of contract law . . . [and] principles of breach of contract and fraud in the inducement are not specific to lending activities." Id at 1115. Thus, none of these claims are preempted by federal law.

Also, "[s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; (3) Homestead laws specified in *12 U.S.C. 1462a(f)*; (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." 12 C.F.R. §560.2(c) As such, Defendant's claim that the use of facially neutral state laws that has an incident affect on lending is contradicted by the exceptions in the statute.

In this case, in spite of what Defendant claims, Plaintiffs' causes of action for Fraud, Negligent Misrepresentation and Contractual Breach of Implied Covenant of Good Faith and Fair Dealing are not preempted by Federal law. First, all of Plaintiffs' claims in the First Amended Complaint implicate laws of general applicability that only incidentally affect lending institutions and, thus, are not preempted as a matter of law. Since these claims, like those made in Reyes, are based on general misrepresentation, failures to disclose, and breaches of contract that affect all businesses, not just lending institutions, none of these claims are preempted. Second, the borrowed claims for Fraud and Negligent Misrepresentation are torts and, thus, are specifically not preempted under *12 C.F.R. §560.2(c)*. Therefore, since none of Plaintiffs' causes of action seek to impose specific regulations on the lending industry and enforcing these general causes of action will not interfere with the uniformity of federal law specifically regulating the banking industry, there is no preemption here and Plaintiffs' claims stand.

**B. Discovery Rule Applies And Consequently The Causes Of Actions Are Not Time Barred**

"Resolution of the statute of limitations issue is normally a question of fact." Fox v. Ethicon Endo-Surgery, Inc. (2005) 35 Cal.4th 797, 810. As our state's high court has observed: "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact." United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., (1970) 1 Cal.3d 586, 597 [reversing judgment after demurrer].

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Norgart v. Upjohn Co., (1999) 21 Cal.4th 383, 397; accord, Fox, supra, 35 Cal.4th at p. 807. The discovery rule "may be expressed by the Legislature or implied by the courts." Norgart, supra, 21 Cal.4th at p. 397. By statute, the discovery rule applies to fraud actions. (Code Civ. Proc., § 338, subd. (d).) In addition, "judicial decisions have declared the discovery rule applicable in situations where the plaintiff is unable to see or appreciate a breach has occurred." Moreno v. Sanchez, (2003) 106 Cal.App.4th 1415, 1423.

The discovery rule "is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." Saliter v. Pierce Brothers Mortuaries, (1978) 81 Cal.App.3d 292, 297. Thus, in actions where the rule applies, the limitations period does not accrue until the aggrieved party has notice of the facts constituting the injury. Fox, supra, 35 Cal.4th at p. 807.

The courts have also recognized that individuals who rely on those who owe them a fiduciary duty are less likely to discover the facts relating to the fraud or misdeed. "Although the general rules relating to pleading and proof of facts excusing a late discovery of fraud remain applicable, it is recognized that in cases involving such a relationship [fiduciary relationship] facts which would ordinarily require investigation may not excite suspicion, and that the same degree of

diligence is not required." Hobart v. Hobart Estate Co., (1945) 26 Cal.2d 412, 440. "Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship." Moreno, supra, 106 Cal.App.4th at p. 1424.

The case of Rutherford v. Rideout Bank, (1938) 11 Cal.2d 479 also provides guidance regarding a person in a fiduciary relationship and the duty to discover fraud. In Rutherford, Plaintiff relied on Rideout Bank for advice in her business and financial affairs for her real properties (Rutherford Ranch and the Home Place) and the court determined a fiduciary relationship existed between the bank and Plaintiff. On December 27, 1920 Plaintiff sold the Rutherford Ranch to Robert J. Finnie base upon the advice and counsel of Rideout Bank's manager Taylor (no first name cited in the decision). In Rutherford, the facts were as follows,

> Taylor, falsely and fraudulently represented to plaintiff as a fact and by way of counsel that if she did not execute the Finnie agreement and deed selling the Rutherford Ranch to Finnie, the bank would foreclose the mortgage of the Home Place and the holders of the trust deed on the Rutherford Ranch could and would sell her out under the trust deed and she would lose everything, that it would be better for her to sell the Rutherford Ranch for $5 an acre, if necessary, and that it was for her best interests to make the sale to Finnie on the terms of the agreement and that the consideration named therein was a fair one; that, relying on this advice of Taylor's, and believing the false representations and counsel, the plaintiff executed the agreement and deed and that <u>if it had not been for the false representations and advice and the plaintiff's implicit belief therein she would not have executed the agreement</u> to sell nor the deed in pursuance thereof.

Rutherford, at 482 (emphasis added).

In Rutherford, the Plaintiff discovered seven years after the sale on September 15, 1927 that Robert Finnie had paid Rideout Bank's manager (Taylor) $2,500.00 for making the fraudulent representations and inducing Plaintiff to make the sale of the Rutherford Ranch to Finnie. Id. In Rutherford, the Defendants argued that it was Plaintiff's inexcusable negligence the kept her so long in ignorance and the payment to Taylor was not a fact constituting the fraud but merely Taylor's motive for committing the fraud. Rutherford, at 485

In Rutherford, the court found that the fraud was in essence a concealed fraud that consisted of Taylor breaching his fiduciary duty to Plaintiff for personal gain. Id., at 486. Taylor concealed from Plaintiff that the advice to sell her Ranch to Finnie was based on false statements

and represented that the deal was in her best interest. Id. The court concluded, "[t]he finding of a confidential relationship is amply sustained by the evidence (citation omitted), and, in view of its existence, Mrs. Rutherford cannot be charged with lack of diligence in making independent investigation either at the time or afterward." Id.

Plaintiffs had no reason to suspect any wrongdoing because of the existence of a fiduciary relationship with the brokerage firm LEONARD. (FAC ¶¶ 15-18) It is well established that a broker owes its client a fiduciary duty. Wyatt v. Union Mortgage Co., (1979) 24 Cal.3d 773, 782.

A mortgage loan broker is customarily retained by a borrower to act as the borrower's agent in negotiating an acceptable loan. "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.' [Citations.] This relationship not only imposes upon him the duty of acting in the highest good faith toward his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency. [Citation.]" Wyatt, supra 24 Cal.3d, at p. 782 citing Batson v. Strehlow (1968) 68 Cal.2d 662, 674-675. A real estate licensee is "charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. [Citations.]" Wyatt, supra 24 Cal.3d, at p. 782.

California CCP Section 338, subdivision 4, provides a three-year statute of limitations for an action for fraud, and states in pertinent part: "The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud...."

In this case, Plaintiffs cannot be charged with lack of diligence in investigation the fraud perpetrated by FIRST NATIONAL and LEONARD because of the fiduciary relationship between Plaintiffs and LEONARD. Plaintiffs cannot be charged with a lack of diligence even though an inquiry would have disclosed the "bait and switch" that LEONARD and FIRST NATIONAL perpetuated. Plaintiffs were unaware of the Yield Spread Premium paid by FIRST NATIONAL to LEONARD.

///

///

///

A Yield Spread Premium was described as follows in Wolski v. Fremont Investment & Loan, (2005) 25 Cal. Rptr. 3d 500, 503 (emphasis added):

> A Yield Spread Premium is a **bonus paid to a broker** *when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender* for a particular loan. **The lender then rewards the broker** by paying it a percentage of the "yield spread" (i.e., the difference between the interest rate specified [approved] by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan. [Citation.] (Citations omitted)
>
> As alleged in the complaint, the lender pays the YSP to the broker at closing, **and the borrower pays a higher interest rate over the life of the loan to compensate [lender] for the [YSP] payment**. (Citations Omitted)"

Inherent in the YSP payment is concealment of its existence *since not a single client of a broker would KNOWINGLY agree that the broker receive a bonus for originating their loan at a higher interest rate than that approved by the lender*. FIRST NATIONAL knowingly participated in LEONARD's concealment of the YSP payment from Plaintiffs since it defies logic that a borrower (consumer) would knowingly agree to pay a higher price for something that could be attained at a lower price, and therefore, FIRST NATIONAL had to have known that LEONARD was not going to reveal to Plaintiffs the lower interest rate approved by them.

Plaintiffs allege that their lacked understanding of the English language and also they lacked understanding of professional finance terminology. In addition, Plaintiffs did not provide accurate translations of the terms as they were required under California Civil Code section 1632. (FAC ¶¶ 40)  Galindo v. Financo Financial, Inc., 2008 WL 4452344, 4 (N.D.Cal., 2008) (finding equitable tolling appropriate where the borrower was unable to read and relied on the oral representations of the lender).  Furthermore, they allege that despite their reasonable inquiry about the material terms of the loan, Defendants misrepresented the material terms of the loan and they relied on the representations of their broker LEONARD and the lender FIRST NATIONAL. (FAC ¶¶ 45-50)

Plaintiffs allege in the FAC the time and manner in which they discovered the fraudulent conduct of LEONARD and FIRST NATIONAL.  In the FAC Plaintiffs plead that it was in June of 2013 (time) when they retained the services of an attorney to defend against a foreclosure

(manner) that they became aware of any wrongdoing. (FAC ¶ 50) Plaintiffs on their own were unable to decipher the significance of the Yield Spread Premium paid by FIRST NATIONAL to LEONARD and it was only after acquiring the services of a professional, attorney, was the fraud revealed to them. The court should find that the discovery rule applies in this case.

### C. Assignee Liability is Established through Constructive Knowledge of Fraudulent Conduct of Loan Originators

It is well recognized under both statute and established legal principles that Defendants would not be deemed holders in due course if they were holding an ordinary promissory note and had actual or constructive knowledge of assignor's fraudulent practices. Vasquez v. Superior Court, (1971) 4 Cal.3d 800, 822. It must be emphasized that the complaint alleges the [assignee] defendants were aware of [assignor's] fraud and under the law one who accepts an instrument with notice of a defense against it is not a holder in due course. Id., at 824. In Vasquez the court concludes by stating, "Zeal is originally employed by the seller in investigating the credit of the buyer; only a modicum of additional zeal by the lender should be necessary to investigate the good faith of the seller. If any hardship results from the rule we adopt, it is only that hardship inherent in the insistence of the law that honesty and enterprise must remain compatible." Id., at 825. By analogy, the "seller" is FIRST NATIONAL and the "buyer" is Plaintiffs and the "lender" is NATIONSTAR.

NATIONSTAR as an assignee was aware of the fraudulent conduct of the loan originators because the loan documents revealed on their face the "kick back" payment made by FIRST NATIONAL to LEONARD in the form of a Yield Spread Premium ("YSP"). A YSP induces a broker to acquire a product for their client at a higher cost than necessary for the benefit of the original lender (and its successors in interest). This practice as defined by the California appellate court (Wolski) rewards a broker for siding with the lender at the borrower's expense.

This practice was so widely seen and known as the "smoking gun" of loan origination fraud that the Federal Reserve Board banned the practice completely in 2010. It described the payments as a clear indicator of "unfair, abusive, or deceptive lending practices." (See, FAC,

Exhibit 1: Federal Reserve Bans YSP)  NATIONSTAR as a leader in the banking industry was well aware of the ban issued by the Federal Reserve Board and the fact that YSPs indicated loan fraud at the time they accepted assignment of the loan in May of 2013.  In paragraphs 12, 54-56 of the FAC, Plaintiffs allege the facts that support their belief that NATIONSTAR knew or had constructive knowledge of the fraudulent conduct of FIRST NATIONAL and LEONARD in originating the loan.  Defendant NATIONSTAR may have facts to dispute this belief but as the Vasquez court held a demurrer cannot be sustained if the complaint contains allegations indicating NATIONSTAR had actual or constructive knowledge of the fraudulent conduct at loan origination, and by analogy the same applies to a Federal Motion to Dismiss.

**D.    Plaintiffs FAC Properly States A Causes Of Action For Fraud and Negligent Misrepresentation.**

Defendants argue that Fraud and Negligent Misrepresentation causes of action fails because they are time barred and not alleged with particularity. As discussed above, the discovery rule tolls the accrual of these causes of actions and any contention that this action is time-barred at this stage of the pleading is misplaced. Also, Defendants' argument that the causes of action are not plead with particularity is flawed and incorrect.

Although Plaintiffs did plead each and every element of fraud in the FAC. (FAC¶ 59-68) the question as to whether Plaintiffs adequately plead concealed or suppressed material facts has been answered by the court as being met by the attachment of the relevant mortgage instrument: the Adjustable Rate Note. Boschma v. Home Loan Center, Inc., (2011) 198 Cal. App.4th 230, 249 *citing* Jordan v. Paul Financial, LLC (N.D. Cal. 2010) 745 F. Supp.2d 1084, 1098. "Plaintiff's evidence is the mortgage instrument, which provides specific content of the allegedly false representations related to [material terms of the loan], as well as the date and place of the alleged fraud. While the precise identities of the employees responsible…are not specified in the loan instrument, defendants possess the superior knowledge of who was responsible for crafting these loan documents." Boschma, at 249 *citing* Jordan, at 1096. Furthermore, Defendant may not rely on "[t]he fact that a false statement may be obviously false to those who are trained and

11
PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FAC

experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts business. Laws are made to protect the trusting as well as the suspicious. [T]he rule of caveat emptor should not be relied upon to reward fraud and deception.'" Boschma, at 249, *citing*, Thompson v. 10,000 RV Sales, Inc. (2005) 130 Cal.App.4th 950, 976.

In any event, much of what Defendant points to as lacking particularity is the question of Defendants' intent, information exclusively within its control which subsequently lessens the particularity pleading requirement for fraud. Committee on Children's Television, Inc. v. General Foods Corps., (1983) 35 Cal.3d 197, 217.

Actual fraud occurs when a party to the contract intends to deceive another party to the contract or to induce another party to enter into the contract on the basis of a promise made without any intention of performing it or any other deceitful act. Benson v. Hamilton, (1932) 126 Cal. App. 331, 334.  "A promise to do something necessarily implies the intention to perform, and where such an intention is absent, there is an implied misrepresentation of fact, which is actionable fraud." Joanaco Projects v. Nixon & Tierney Constr. Co., (1967) 248 Cal.App.2d 821, 831  (emphasis in original). Accordingly, Defendant's promise that they are capable of performing their obligations, or one which induces Plaintiff to contract with defendants, is a "duty that gives rise to tort liability completely independent of the contract." Erlich v. Menezes, (1999) 21 Cal.4th 543, 552 (acknowledging the blurred distinctions between tort and contract claims).

"Actual fraud consists, among other things, of "[t]he suppression of that which is true, by one having knowledge or belief of the fact" or "[a]ny other act fitted to deceive." (Civ. Code, § 1572, subds. 3, 5; see also Civ. Code, § 1710, subd. 3 [definition of "deceit" includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"]; Vega v. Jones, Day, Reavis & Pogue (2004) 121 Cal.App.4th 282, 292 ["active concealment or suppression of facts . . . is the equivalent of a false representation"].)" Boschma at 248.

The misrepresentations between Plaintiffs and FIRST FINANCIAL, through LEONARD are

clear and adequately alleged throughout FAC. Plaintiff alleges that Defendants concealed or suppressed material facts about material terms of the loan and made false representations related to interest rate and monthly payments. (FAC¶ 69-75)

The Courts have long recognized that the purpose of the specificity requirement is to give defendants explicit notice of the conduct alleged as fraudulent, but that "the requirement of specificity is relaxed when the allegations indicate that the defendant must necessarily possess full information concerning the facts of the controversy or when the facts lie more directly in the knowledge of the opposite party." Tarmann v. State Farm Mut. Auto Ins. Co. (1991) 2 Cal.App.4th 153, 157-158. As discussed above, Defendants' own records contain the information about the misrepresentations and concealments about which Plaintiffs complain. Thus, FAC pleads facts sufficient to place Defendants on notice of the false representations and concealments alleged against them.

Furthermore, Defendants had a legal duty under TILA to clearly and conspicuously describe the terms of the loan to Plaintiff. Boschma, at 250. Defendants had a common law duty to avoid making partial, misleading representations that effectively concealed material facts. *See* Randi W. v. Muroc Joint Unified School Dist., (1997) 14 Cal.4th 1066, 1082-1084.

The Boschma analysis regarding the teaser rate compellingly applies to Plaintiffs factual situation since Plaintiffs had a teaser rate of 1.490% and an index plus 3.650% variable rate formula. In Boschma at page 249 to 250 the court outlines the impact of the

> The root of the alleged deficiencies in defendant's disclosures is defendant's use of a significantly discounted teaser rate rather than an initial rate set near the rate that would result from the application of the variable rate formula in the Note (an index plus 3.5/3.25 percent). <u>The teaser rate creates an artificially low (compared to the actual cost of credit) initial payment schedule and guarantees that the actual applicable interest rate (after the first month of the loan) will exceed the interest rate used to calculate the payment schedule for the initial years of the loan.</u> If the initial interest rate were set using the Note's variable rate formula, it would actually be possible that interest rates would adjust downward (or stay the same) after the first payment and no negative amortization would occur. In other words, the disclosures' conditional language is accurate absent a significantly discounted rate. An Option ARM loan without a teaser rate would result in a higher initial interest rate, higher initial minimum payments pursuant to the payment schedule, and a much narrower gap (even if interest rates increased) between the borrower's payment "options." ***Of course, without a teaser rate, the surface attractiveness of Option ARM's would have been greatly diminished precisely because the stated (initial) interest rate and (initial) payment would be higher***.

13
PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FAC

Case4:13-cv-04353-CW Document17 Filed11/07/13 Page14 of 16

> ¶¶
> Taking plaintiffs' factual allegations to be true, defendant intentionally omitted a clear disclosure of the nature of plaintiffs' loans ***because giving a clear explanation of how the loans worked would have punctured the illusion of a low payment, low interest rate loan***.
>
> Boschma, at 249-250.

Just as in Boschma, the loan documents provide the specificity required and the reasoning behind First National's motivation to not explain the true nature of Plaintiffs loan to them. Accordingly, Defendant's motion to dismiss should be denied as to the fraud and negligent misrepresentation causes of action.

### E. Plaintiffs Have Properly Alleged a Violation of the Covenant of Good Faith and Fair Dealing

The existence of implied covenants of good faith and fair dealing in all contracts has long been the law. As stated in Universal Sales Corp. v. Cal. etc. Mfg. Co., (1942) 20 Cal.2d 751, 771 "In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing."

As alleged in the FAC, NATIONSTAR was assigned the rights and the beneficial interest to the Note and Deed of Trust which governed the relationship between Plaintiffs and original lender FIRST NATIONAL. Defendant also owed a duty of good faith and fair dealing to Plaintiffs which he alleges were breached. Therefore, Defendant's Motion to Dismiss to breach of the implied covenant of good faith and fair dealing cause of action must be denied.

### F. Plaintiffs Request Leave To Amend The Complaint To Include A New Cause Of Action For Violation Of Civil Code Section 2924.17.

Defendant in its Request for Judicial Notice included as Exhibit C, A Corporate Assignment of Deed of Trust recorded on June 3, 2013 as document number 2013-0027502 of the Official Records of the Santa Cruz County Recorder's Office, which violates the requirements of Civil Code Section 2924. 17 and consequently invalidates its force and effect. Plaintiffs request leave

14
PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FAC

to amend the First Amended Complaint to add a Cause of Action for Violation of Civil Code Section 2924.17.

Civil Code Section 2924.17 states that before recording an "assignment of a deed of trust" the mortgage servicer "**SHALL ensure** that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Civ. Code Section 2924.17(b). Mortgage servicers have included a statement certifying that the document is "accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." A review of the Assignment for Defendant reveals that the document lacks any compliance with section 2924.17 and there is no record that the mortgage complied with the "SHALL ensure" requirement of the law BEFORE recoding the Assignment.

**IV.   CONCLUSION**

Based on the above, Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied or provide Plaintiffs with leave to amend.

Dated:  November 7, 2013                           NICK PACHECO LAW GROUP, APC


                                                   By:      /S/ NICK PACHECO
                                                           Nick Pacheco, Esq.
                                                           Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: mks@severson.com and tna@severson.com

    I also caused the foregoing **PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FAC** to be served by U.S. Mail with postage prepaid upon the parties below:

| | |
|---|---|
| Mary Kate Sullivan, Esq. | Attorneys for Defendant |
| Thomas N. Abbot, Esq. | Nationstar Mortgage, LLC |
| SEVERSON & WERSON | |
| One Embarcadero Center, Suite 2600 | |
| San Francisco, CA 94111 | |
| Telephone: 415.398.3344 | |
| Facsimile: 415.956.0439 | |

    A copy to chambers was also sent with Notice of Electronic Filing via GSO on November 7, 2013

Hon. Claudia Wilken
Oakland Courthouse-Courtroom 2 – 4th Floor
1301 Clay Street, Oakland, CA 94612

Date: November 7, 2013          By:   /s/ Giovanni Benavidez
                                                                   Giovanni Benavidez